Statement of the Case.
MONROE, J.
Relator alleges that he instituted the above-entitled suit in the district court for the parish of Calcasieu to have defendant declared ineligible to - hold the office of sheriff; that the presiding judge was recused, and Judge J. B. Lee appointed to sit in his stead; that on June 25, 1907, a mistrial was entered, and relator moved to fix the case for July 22d following, which motion was refused, on the ground that such fixing would interfere with other judicial work which it was incumbent on the judge ad hoe to perform; that relator applied for a mandamus to compel the fixing of the case, and on August 7, 1907, obtained from this court a decree ordering that the ease be fixed on the second day of the next jury term; that, as a result of said decree, the case was again taken up for trial on November 12, 1907, but that there was another mistrial, and the jury was discharged on November 16th; that, upon the following morning, the regular venire having been discharged, relator moved to fix the case for November 18th, a jury having been drawn for that date to try cases both civil and criminal, but that the judge ad hoc refused to allow the motion; that relator then moved to fix it for November 25th, a jury being drawn for the trial of cases, both civil and criminal, on that date, which motion was also denied, and relator excepted to the ruling; that relator then moved to fix the case for December 2d, that it stand fixed from day to day until it could be tried, and that a special jury be ordered for the trial, which motion the judge ad hoc refused to entertain, because he had ordered the case set down for the second day of the next regular jury term. Relator alleges that the reasons given by the judge ad hoc for refusing to permit the fixing of th£ ease as requested were the same as those given for his refusal to fix it on July 22d, when his action was declared by this court to have been wrong; that there is no definite time fixed for the next term of court, the matter depending upon the business.to be done; that the court is not required to order a jury save within six months of the present term, which has just begun; that the judge ad hoc has violated the order of this court directing him to try the case without regard to the business of his own district, and should be held guilty of contempt; that he intends to try said ease once at each regular term of the court, pretending thereby to comply with the order of this court, which will “give the defendant, D. J. Reid, ample opportunity to fix the jurors, so that the result, each time, will b.e a mistrial; that no verdict can be reached in the parish of Calcasieu, unless the case is tried from day to day, and trials repeated so fast and so often that the defendant will not have time to fix the jury; that one of the principal troubles in trying this case is that the *203 Honorable J. B. Lee becomes daily intoxicated, and has become so debauched that he has no appreciation of law and order and good government; that, during the trial of this case, or rather while the jury was in the jury room, deliberating, relator made a statement, in open court, to the Honorable J. B. Lee, while he was on the bench, that the defendant was sending valuable presents to the jury; that, when the jury was out just 4 hours and 45 minutes, D. J. Reid, defendant, had sent them $10 worth of cigars, which statement was made in the presence of D. J. Reid, defendant, and of the coroner, W. L. Fisher, both of whom, in open court, admitted to the court the truth of relator’s statement; and that the court then and there ruled from the bench that he saw no impropriety in giving the jury what they wanted to smoke, or what they wanted to drink, that the court did both, and he saw no objection to the defendant, the court, or the relator supplying the jury with what they wanted to smoke or drink, so long as the jury did not know where it came from.” Relator further alleges that he has, heretofore, applied to this court to transfer the case in question to the nearest parish of an adjoining district, the judge of which is competent to try it, and on November 9, 1907, the defendant applied to this court to have it transferred to the nearest parish of an adjoining district, the judge of which is competent to try it, and that, both parties having made such application, he believes that this court might, in the exercise of its supervisory jurisdiction, transfer the case to the Honorable P. S. Pugh, of Crowley; that relator is entitled to a change of venue; that the Honorable J. B. Lee would never pass on the application therefor, or, if he did, it would be in a manner to defeat justice; that he is responsible for there being no verdict; that it is the desire of the defendant that no verdict be found; that said judge ad hoc could have tried the ease during the present term so often that the defendant would have had no opportunity to defeat the law; that he, however, not only violates the order of this court, but so arranges the work of his own as to interfere with the trial of the case; that this honorable court will not be able to remedy, by mandamus, the wrong done by said judge ad hoc, in refusing to fix the case in question for trial, during the present term of the district court, because the time will have passed before relief can be granted; but that relator is entitled to a mandamus ordering said judge ad hoc to fix said case for a definite time, and directing him to order the jury commission to summon a special jury in accordance with law and with relator’s motion of November 16, 1907. After some further allegation, relator prays that the Honorable J. B. Lee be ruled to show cause why he should not be held in contempt of this court; that the suit against Reid be transferred to the district court for the parish of Acadia, to be tried by the Honorable P. S. Pugh, judge; and, in the alternative, that a mandamus issue ordering the Honorable J. B. Lee, judge ad hoc, to permit relator to fix said cause for trial, to order a special jury therefor, and the case be tried and disposed of.
To the foregoing allegations and prayer, the judge ad hoc makes answer and return, in substance, as follows: That, in compliance with the order of this court, he fixed the case of Relator v. Reid, and on November 12, 1907, impaneled a jury and proceeded to try the same. That, when the case was submitted, the jury retired in the custody of the coroner, who was the proper officer to exercise the function of the sheriff. That, pending the deliberations of the jury, the foreman 'asked whether the jurors would be permitted to smoke, to which respondent replied in the affirmative. That, on the following day, relator complained that cigars were *205 being furnished to the jury by defendant, whereupon respondent called the attention of the coroner to the matter, and was informed that:
e+K a> 5 3 £ o ! H S- S’S’ ® ~ ® pi »8-o S’"* 18 i a a B r*-p £• £ 3; O (T> Pi >-,o H rt Í3 _ o rt ^ 1 § íffJjSaéíggM fcr P Pi * o-9 A 1 J P tí !• a> w P‘p eup D ^ P'P 5 P'p p H>i* ' 5*8 ^ SiStfo’P ?f3 ° © ° s3 3 8Éf^gWi2.'§.a,g.tíri ® ?|^§2.S§S.°g;rt.§0'B I 5-Sort-p‘a’Bg:g^g-ttg’gg’& <g ¡3] * p ) e+W Cr*Hs£3 yo O ! Co m C m m rtH
Respondent shows: That the case was submitted, without argument, at 2 o’clock p. m. on November 12, 1907, and that the jury were kept sequestered until November 16th at 10 :30 o’clock a. m., they having, repeatedly, in the meanwhile, reported their inability to agree on a verdict, and that respondent, being satisfied that no verdict could be reached, and the courthouse being cold and unprovided with any heating apparatus, discharged them. That relator moved to fix the case as alleged, but that respondent had already re-fixed the same for the second day of the next term, announcing that, if it were possible for him to do so, he would, after conferring with counsel, fix it during the week beginning November 25th. “That he could not have refixed said case for the week beginning November ISth, nor could he properly have fixed it for any of the times suggested by relator, for the reason that the press of business in his own district and the prisoners in jail, who were demanding and clamoring for trial, made it absolutely necessary that your respondent should devote some time to their demands, but, as stated from the bench at the time, your respondent'was willing to hear said case at the earliest possible moment, and only waited for an opportunity to examine the condition of his own district, to fix, absolutely, an early day for the trial of said case; and, had said relator waited until your respondent could have consulted the conditions of his own district, he would have fixed said case for trial on the 2d day of December, 1907, and had actually signed an order to that effect when served herein or notified of this proceeding, when your respondent recalled said order. . That defendant, Reid, made application for the transfer of the case, and respondent’s denial of said application was approved by this court, in that the court refused to order the transfer. That relator has made no 'such application, and, if he will agree thereto, subject to the approval of this court, respondent will transfer the ease to the judge of some adjoining district, but that he is advised that, until such application is made,' he is without authority to consider the question. That he has, in all things, attempted to comply with the rulings of this court, and has committed no contempt of its authority. That the statement made in the petition, to the effect that he ‘becomes daily intoxicated, and has become so debauched that he has no appreciation of law and order and good government,’ was wickedly and recklessly made by the said relator, and was, to his knowledge, at the time that he made it, infamously and outrageously untrue, as will appear by statements from the various officers of the court and various members of the bar who were present during the trial, which are hereto annexed and made part hereof. * * * That the statement ‘that the Honorable J. B. Lee would never pass upon an application (for transfer of the case), if the same should be made to him, or, if he did pass upon such an application, it would be in a manner to defeat justice,’ was made by said relator as a gratuitous slander, * * * and is in.keeping with the reckless and wicked disregard of truth on the part of said relator. • * * That the charge * * * that respondent is responsible for there being no verdict * * * is false and untrue; * * * *207 the fact being that respondent has done all that he could do under the law in order to get a verdict in said case. * * * That he is ready to abandon the business of his own judicial district, and to fix and try this case at any time that may be ordered by the Supreme Court, if in its opinion the fixing thereof on the second day of the next jury term of court in the parish of Calcasieu is an undue delay thereof. And that, if requested by this honorable court, he will try said case from day to day and continuously until a verdict is reached in said case, or, if ordered to do so by this court, or this court thinks he can do so within the law, he will gladly transfer said case to the judge of the adjoining district, and is now ready and willing to do any thing or act that may facilitate a speedy trial of said case, and has always been ready and willing to do so, or is ready to tender his resignation as judge in said case and permit the selection of any other judge to try the same,” etc.
We find attached to this return affidavits subscribed by the' judge, clerk, sheriff, and minute clerk of the Fifteenth district court and by some of the members of the bar, to the effect that they, severally, had had occasion to see the respondent during the trial of the case in question, and that they observed nothing in his manner, appearance, or action indicating intoxication or the influence of liquor, or that he was not in full possession of his faculties. And we also find a paper, in the nature of a rejoinder, by the relator, in which he reiterates, with specification, the charges of intoxication, and gives the names of persons by whom, he alleges, the fact can be proved. There has also been filed'here an answer by the defendant, Reid, who alleges that relator is not entitled to have the case in question transferred to be tried by Judge Pugh, because he has not made application therefor to Judge Lee, since the expiration of the nine months, as provided by Act No. 40, p. 38, of 1880. He alleges that the statements in the petition charging him with fixing the jurors and sending them presents, and reflecting upon the judge ad hoc, are false, and—
“appearer further states that, after said jury was sequestered, and at the time court was about to adjourn for the noon recess, a question came up relative to the feeding of the jury whilst it was being sequestered, as, on a previous trial, the relator appeared before the police jury and opposed the payment of a bill of W. L. Fisher, coroner, for meals furnished the jury during the time it was sequestered, but relator contended, in open court, at the time of the trial of the case upon the 12th of November, 1907, that the parish was not responsible for feeding said jurors, and that your appearer should pay ail the expenses of said jury, whereupon your appearer, through his attorney, notified the court, in the presence of the relator, if there was any question of the liability of the parish for feeding the jury while it was sequestered, that, rather than have them starve or suffer, he would bear the expense of furnishing meals and other necessaries during the time they were sequestered, either for the purpose of the trial of this case or for the deliberation of the jury, in order to reach a verdict, which statement was made in open court in the presence of the relator, and that the relator replied that the defendant (your appearer herein) should feed them. Xour appearer is informed that W. L. Fisher, the coroner, acting upon the statements which were made in open court, and in the presence of the relator, and with his consent, ordered meals for said jury, and also ordered a box of cigars for them to use while they were sequestered, and that said supplies and necessaries were ordered charged to your appearer by said coroner, without any other authority from your appearer except the declaration made by his attorney in the presence of the court and of the relator, to which relator consented.”
Appearer makes other allegations impugning the motives and character of the relator, and prays that the court make some arrangement by which the issues of fact thus presented may be determined.
Opinion,
The suit entitled “State ex rel. Morris R. Stewart, Acting District Attorney, v. David J. Reid,” of which the present proceeding is an incident, is an action having for its object the obtention"of a judgment decreeing the defendant ineligible to the office of sheriff for'the parish of Calcasieu, of which office he holds possession, on the ground that, *209 at the time of his election, he was a defaulter with respect to taxes, collected by him during a previous term, in a sum exceeding $12,-000. It appears that, as far back as 1904, certain citizens of the parish, acting under the authority of what is known as the “Intrusion Act” (being Act No. 156, p. 199, of 186S; Rev. St. § 2593 et seq.), presented a petition to the district attorney requesting him to institute the suit; that the district attorney thereupon presented a petition to the judge of the district court, setting up certain grounds for his own recusation,' and praying that a district attorney pro tern, be appointed; and that the court appointed the relator herein, by whom the suit was then instituted. Defendant thereupon excepted, on the ground that plaintiff was disqualified from acting in the matter by reason of his previous relations, and the district judge gave judgment maintaining the exception, which judgment was reversed on appeal to this court. State ex rel. Stewart v. Reid, 113 La. 890, 37 South. 866. Defendant then moved to recuse the judge of the district court upon the ground of his previous relations to the matter, and the judge referred the question of his recusation in the present respondent for decision, and his action in so doing was approved by this court. State ex rel. Stewart v. Reid, 114 La. 97, 38 South. 70. In May, or June, 1905, relator complained to this court that respondent was delaying action, and prayed that he be ordered by mandamus to hear and decide the motion to re-cuse within a delay to be fixed; and, to the application so made, respondent answered, denying that he was seeking delay, and alleging that he had “repeatedly sought the parties interested * * * to fix some date whereby he might arrange the term of his court for the trial of the cases therein to meet the requests of the plaintiff, in the matter.” In deciding the case, this court said:
“We are not prepared to say that the respondent judge has refused or neglected to perforin the "duties required of him by law relative to. the motion to recuse. Code Prac. art. 838. We will say, however,, that his duty to try said motion ‘as early as practicable’ is statutory, and we hope that the arduous labors of his own judicial district will permit him, at an early date, to dispose of the motion of recusation, which stands as a bar to further proceedings in an important cause.” State ex rel. Stewart v. Reid, 115 La. 196, 38 South. 963.
About the latter part of November, 1905, relator again complained to this court, alleging that, nine months having elapsed from the date of the recusation of the presiding judge, without his having been able to obtain a trial, the case ought to be transferred to the judge of the district court for the parish, of Acadia (being the nearest parish of an adjoining district); that he had moved the judge ad hoc to make the transfer; and that the judge ad hoc had declined to do so, on the ground that, the delay within which he-was required by law to act having expired, he had no further jurisdiction of .the matter. Wherefore relator prayed that a writ of' mandamus issue ordering that such transfer-be made. It was found by this court that the motion to recuse the presiding judge had never been tried, and hence that there had been no recusation. The court said:
“The acting district attorney was in error in supposing that, because the nine months had elapsed from the date of the appointment of respondent to try the issue as to whether the district judge should be recused or not, the-matter had passed out of the latter’s hands, and the cause should be transferred at once to another parish. The nine months referred to-commence to run, as appears by the express language of the statute, ‘from the date of the recusation.’ In this case, there has been as yet no order of recusation. That is a matter still open for decision, and the very question which the respondent judge was called on to try. So. far from the nine months having expired, they have not yet commenced to run.” State ex rel. Stewart v. Reid. 115 La. 739, 39 South. 998.
Thereafter the motion to recuse the presiding judge appears to have been tried and sustained, and it was held by this court that the judge ad hoc ruled correctly in holding *211 that- relator was not entitled to a suspensive appeal from the judgment so rendered. State ex rel. Stewart v. Reid, 115 La. 959, 40 South. 369. The main case was then (some time during the year 1906) heard, upon an exception of no cause of action, which was sustained by the judge ad hoc, which ruling was reversed by this court, on appeal; the rehearing having been refused in January, 1907. State ex rel. Stewart v. Reid, 118 La. 106, 42 South. 662. Later in the same month, relator again complained to this court, alleging that nine months had elapsed without trial, and that he had applied for the transfer of the case, and praying for a mandamus ordering that the transfer be granted. It was, however, held that:
“The delay within which a recused case should be tried by the judge ad hoc begins to run from the date of the recusation of the judge a quo, and the case is ‘tried,’ within the contemplation of the law (Act No. 40 of 1880, p. 39, § 5), although dismissed on exception of no cause of action, filed after default, and although, on appeal, the judgment of dismissal being reversed, it is remanded to be further proceeded with.”
The mandamus prayed for was accordingly denied. This court, however, took occasion to say:
“We may remark, in conclusion, that it seems to us deplorable that a case involving a matter of so much public concern as the eligibility of the sheriff of one of the largest and wealthiest parishes in the state, and which the lawmaker has thought proper to say shall be tried by the judge ad hoc as early as possible, or as the requirements of his duties may permit, should not have been finally disposed of within a delay of nearly two years from the date of its institution.’.’ State ex rel. Stewart v. Reid, 118 La. 476, 43 South. 56.
In May or June, 1907, relator again complained that respondent was delaying the trial of the case, and prayed that a mandamus issue ordering him to fix it, to which application respondent answered “that the case would be tried at his earliest convenience, not to conflict with the duties of his own district,” and that “the ease had been fixed [the fixing having been done, as we understand it, after the application for mandamus had been made] for June 24, 1907.” State ex rel. Stewart v. Reid, 119 La. 390, 44 South. 137. In July, following, relator again complained, to this court that, there having been a mistrial on June 25th, he had moved that the case be fixed for July 22d, a jury having been drawn for that date for the trial of civil and criminal cases, which motion was denied; that he then moved that the case be fixed for as early a date as possible, which was also denied by the judge ad hoc for reasons assigned by him, as follows:
“The court is not in a position just at this time to designate any date. The Twelfth judicial district court of Louisiana has not been abolished, and the court, unless he avails himself of a constitutional provision of two months’ vacation, will be holding court in the parishes of Vernon and Sabine during the month of July and criminal court in the parish of De Soto during the month of August. This case has been tried by a jury three times, and in each instance a mistrial resulted. I cannot neglect the entire Twelfth judicial district of Louisiana to come here continually and try this case, except at such times as shall suit my convenience, and not conflict with my regular term of court in the Twelfth judicial district of Louisiana. I will try this case at the earliest date that I can possibly do so.”
Wherefore relator prayed that a mandamus issue directing respondent to fix the case for a day certain, and the writ issued accordingly, directing him to fix it for trial with preference over all other cases on the second day of the next term'of “that [the Fifteenth district] court.” In the opinion upon which the judgment thus mentioned was based, it was said:
“The refusal of the court to fix the case for trial on the 22d of July was wrong, but that particular error cannot be remedied by mandamus, as that day had come and passed before we could * * * grant relief. * * * He Lthe judge a quo] refused, himself, to designate a particular day for that purpose ‘[the trial], for reasons assigned. We are of opinion that, though those reasons were forcible, they were not sufficient to warrant him in refusing to select a future day fixing the case for trial, with the avowed purpose of subordinating the day of trial to some undisclosed, unknown, date, which he would determine later in accordance with what he might conceive would be the just *213 demands of litigants in his own district. If matters were permitted to remain on that basis, this preference case might drift, without a judgment as to defendant’s eligibility, until after the full term for which he has been elected shall have expired. If that situation should result from the course which may hereafter be taken by juries trying the case, the judge will not be responsible for it, nor will he be responsible for the disturbance of business in his own district.” State ex rel. Stewart v. Reid (No. 16,717 of the docket of this court, 119 La. 884, 44 South. 689.
The case was again called for trial on November 12th, and, a mistrial having resulted, the judge ad hoc, of his own motion, refixed it for the second day of the next jury term, which (it is alleged and not denied) may be six months hence. The minutes of the court of November 16th (the day following the mistrial) read, in part, as follows:
“Relator moves to fix this case for Monday, the 18th instant, there being a jury drawn to bé in attendance for that date for the trial of civil and criminal cases, which is refused by the court for the reasons that he has a grand jury in session at Leesville, at this time, who will report to him on Monday the 18th, with a various number of parties in jail who are demanding trials. I will fix the case for the second day of the next regular jury term of this court; however, reserving to myself, after advice with counsel, after having been to Leesville, the right to change the fixing of the same to some day week after next. Relator excepts to the ruling of the court, and moves to fix the case for Monday, the 25th instant. The court will fix it for the 25th instant if he finds he can possibly get there. If he cannot, the court is not expected to perform miracles. Relator excepts to the ruling of the court, and moves to fix the case for the 2d day of December, 1907, and asks that the court appoint a special jury to be in attendance for the trial of this case, and, if anything should cause a delay, that it cannot be tried upon that date, that it stand fixed from day to day until it can be taken up and disposed of. (Counsel for defendant here objected to the fixing of the case on December 2d, on the ground that they would be engaged on that day in the Supreme Court.) The court will not entertain the motion because he had already fixed it. However, if he finds it is convenient, and it is in his power to try the case, on either of the dates asked by the gentlemen, the case will be' tried. The counsel for both the relator and the defendant will be notified of the fixing of the date.”
The law under which the suit is brought reads, in part, as follows:
“That all the cases coming under the provisions of this law may be tried before a judge of the district, in chambers, or at a special term,, called by said judge on legal notice being given the parties interested, and, if required by either party, the judge may order a special jury to be summoned according to law to try such case.” Act No. 156, p. 201, of 1868, § 13; Rev. St. § 2605.
The law applicable to the trial of recused cases provides: That, when a judge recuses himself and appoints another judge in his place, a copy of the order of recusation shall be “immediately” forwarded to the sheriff of the parish or residence of the judge so appointed. “That it shall be the duty of the district judge appointed, * * * as early as practicable, or as the requirements of his district may permit, to go to the court at which the recused ease, for the trial of which he shall have been appointed, is pending, and there try and determine the case. * * * That, whenever any recused case, for the trial of which a district judge had been appointed, has not been tried in nine months from the recusation, it shall be the duty of the district judge to order the transfer of such case to the district court of the nearest parish of an adjoining district, the judge of which is competent to try the case.” Act No. 40, p. 39, of 1880, §§ 3-5. We have, therefore, a case of such grave public importance that the General Assembly has provided that (let the duty of trying it rest upon whomsoever the law places it) it may be tried in chambers, or at special term of court, or by a special jury called for that purpose, or both at a special term and by a special jury; and, construing the law thus referred to with that relating to the trial of recused cases, we are of opinion that the case in question should have been afforded as speedy a trial as could have been afforded a case of similar character instituted in the court in which the respondent judge presides. The proposition that he cannot accord such case the preference to which it is entitled by law, because it would inter *215 fere with the business of his own court, is therefore as untenable and as unreasonable as would be a proposition to the effect that he could not accord a similar case, pending in,his own court, the preference given it by law, because it would work that result. And respondent’s persistence in subordinating the trial of the case in question to the general business of his court, nine-tenths of which must, in the nature of things, be of secondary importance in comparison, is the less excusable for the reason that this court has, on three several occasions, considerately, but pointedly, declared that the obligation resting upon him to try such case “as early as possible is statutory”; that the delay in disposing of it “is deplorable”; and that it is entitled to be tried' by preference, the last expression of opinion being in the form of a decree ordering respondent to fix the case for “trial, with preference over all other cases, on the second day of the next term of the court.” Moreover, upon the occasion of the last mistrial, respondent pursued practically the same course which this court had just decided was a mistaken one, i. e., he ordered the case to be fixed for a day possibly six months in the future, and, in ruling upon relator’s motion to fix it earlier, said:
“The court will not entertain the motion because he has already fixed it. However, if he finds it is convenient, and it is in his power, to try the case on either date asked by the gentlemen, the case will' be tried.”
The right of a litigant and of the people of a parish and of a state to have a summary case of importance tried by an officer, who receives a salary for such work, is not, however, altogether dependent on the convenience of the ofiicer. What the respondent meant by saying that he would try the case if it should be “in his power,” we take it, was that he would try it if he succeeded in disposing of all the business pending in his own court, or if he failed to find there any business which he considered entitled to a preference over the suit, which had been pending for three years, to test the eligibility of the sheriff of the parish of Calcasieu. His return would have been more to the point if he had stated that there was such pending business, though we think it safe to assume that there is not much business of greater public interest than that which is involved in this controversy now pending in all of the courts in the state taken collectively. This court is in no position to pass upon the charges of misconduct which the relator makes against the respondent and the defendant, or upon the counter charges which they make against him (save as to the matter of feeding and furnishing luxuries [cigars] to the jury, certain of the facts concerning which are admitted), for the reason that, in this proceeding, the parties cannot be afforded a fair opportunity to be heard. We therefore allow matters to stand, in those respects, as they are, with the observation, however, that, so far as the record shows, the relator has diligently, faithfully, and persistently discharged the duty to which he was assigned by the presiding judge of the Fifteenth district court, at the instance of the former district attorney. In his return, respondent admits that relator complained that cigars were being furnished to the jury (which was then deliberating on its verdict), by the defendant, and that he found no objection to that practice, inasmuch as the coroner, acting sheriff (by whom the cigars were purchased for the account of the defendant, though, as the latter says, without any specific authority from him), stated that the jurors did not know from whom they came. The respondent does not refer to the fact that the jurors were also furnished with their meals at the expense of the defendant, who alleges that they were so furnished to the knowledge of the relator. And it is hardly to be supposed that respondent was ignorant of the fact which, considering the situation and history of the pending litigation and the relation of *217 the defendant to it, and to the court, is not likely to reflect credit upon the administration of justice in this state. It is highly unlikely that the acting sheriff, whilst furnishing meals and cigars to the jury, at the expense of the sheriff, kept the jury in utter ignorance of the source of those bounties, and a juror ought not to be placed in the position of eating his food and smoking his cigars at the expense of one against whom it may be his duty to bring in a verdict, unless the expense is taxed as part of the costs in the case. Though the law may not provide for the feeding of the jurors, in cases such as that here in question, by taxing the expense as costs or otherwise (and, so far as we know, it does not), and the compensation of the jurors may be insufficient to enable them to feed themselves, nevertheless, a due regard for the proprieties of the situation, as well as for the rights of the parties, should have prevented their being entertained at the expense of the defendant, upon whom they were sitting in judgment. The interests of justice would, perhaps, be best subserved by transferring the case to another judge, but we find in the law no authority for making an order to that effect. The statute upon the subject provides, as we have seen:
“That whenever any recused case, for the trial of which a district judge has been appointed, * * * has not been tried in nine months from the date of the recusation, it shall be the duty of the district judge to order the transfer of such case to the district court of the nearest parish of an adjoining district, the judge of which is competent to try the case.” Act No. 40, p. 39, of 1880, § 5.
The ease under consideration was, however, tried within nine months of the recusation, and nine months have not elapsed since the last mistrial. The condition under which the transfer could be ordered does not therefore exist. Moreover, it is the district judge (meaning the judge ad hoe having jurisdiction of the case when the delay expires) who is authorized to make the transfer and select his successor, and not this court, though, no doubt, in a proper case being presented, this court will direct the judge ad hoe to act, if he fails or refuses to do so. The respondent herein complied with the terms of the order directed to him, and, whilst he does not seem to have appreciated the spirit of the rulings which have been made, we do not find him guilty of contempt. The decree to be entered will therefore be limited to directing him to again fix the ease for trial, for a day certain, and to try it; and, as this is the fourteenth application that has been made to this court in connection with a matter which has now very much the appearance of a public scandal, it is to be hoped that no further incidental applications will be found necessary.
It is therefore ordered, adjudged, and decreed that the alternative writ of mandamus herein issued be now made peremptory in so far as that the respondent judge is ordered to set down the case of State ex rel. Morris R. Stewart, Acting District Attorney, v. David J. Reid, for trial, with preference over all other cases, upon Tuesday, December 17, 1907, and, if need be, to cause a special jury to be summoned for the trial thereof, and that he proceed with such trial from day to day until it shall have terminated in a verdict and judgment, a mistrial, or a judgment by the court, in the event that the jury should be waived. It is further ordered that said respondent pay the costs of this proceeding.